**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HELENA F. SCOTT,                :

    Plaintiff,               :

vs.                             :     CA 06-0479-C

MICHAEL J. ASTRUE,              :
Commissioner of Social Security,[1]
                                :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 16 & 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this

---

[1] Effective February 12, 2007, Michael J. Astrue was confirmed by the Senate to serve as the Commissioner of Social Security. Accordingly, pursuant to the provisions of Rule 25(d)(1) of the Federal Rules of Civil Procedure, Astrue is substituted for Jo Anne B. Barnhart as the proper defendant in this action.

case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the March 28, 2007 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

Plaintiff alleges disability due to status-post fracture of the tibia/fibula with mild residual valgus to the ankle, a herniated disc with nerve root compression, diabetes mellitus with peripheral neuropathy, asthma/COPD, back pain, and depression. The Administrative Law Judge (ALJ) made the following relevant findings:

> 3. The claimant possesses the impairments of status post fracture of the tibia/fibula with mild residual valgus to the ankle, lumbar strain, and mild lumbar degenerative disc disease, which are "severe" impairments under the Act and Regulations.
>
> 4. The claimant's impairments, when considered individually and in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P,

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (Docs. 16 & 17 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Appendix 1.

5.    The claimant did not allege a mental or emotional medically-determinable impairment at the time of the hearing or in conjunction with the current applications.

6.    The claimant's assertions relative to symptomatology, functional limitations and restrictions of activities of daily living have been considered in light of the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p, and are found to lack corroboration or substantiation in the medical evidence, and are not credible as to a disabling impairment.

7.    The claimant possesses the residual functional capacity to perform medium work activity on a regular and sustained basis. Specifically, the claimant can occasionally lift up to 100 pounds, frequently lift up to 50 pounds and continuously lift up to 25 pounds, occasionally carry up to 50 pounds, frequently carry up to 25 pounds and continuously carry up to 20 pounds. She can use both of her hands for repetitive action such as simple grasping, pushing and pulling of arm controls and for fine manipulation, and use both of her feet for repetitive movements as in pushing and pulling of leg controls. She can continuously reach and frequently bend, squat, crawl and climb, and has no restriction of activities involving exposure to marked changes in temperature and humidity or to exposure to dust, fumes and gases, mild restriction to being around moving machinery and driving automotive equipment and moderate restriction of activities involving unprotected heights.

8.    The claimant's past relevant work as a fast food worker, waitress and cook do not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

9.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 23-24)  The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a fast food worker, waitress and cook and therefore is not disabled, is supported by substantial evidence.  Substantial

evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, the plaintiff contends that the ALJ committed the following errors: (1) he erred in failing to properly evaluate plaintiff's pain; (2) he erred in failing to develop a full and fair record regarding plaintiff's depression and mental acuity; and (3) he erred in failing to find plaintiff's insulin-dependent diabetes mellitus with peripheral neuropathy and asthma/COPD to be severe impairments. Because the Court finds that the ALJ erred in implicitly determining that plaintiff's insulin-dependent diabetes mellitus with peripheral neuropathy is not a severe physical impairment, the other errors raised by plaintiff are not discussed. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

The Commissioner's severity regulation requires the claimant to make

a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").[3]

---

[3] It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*. *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7,

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and the informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of the function is inherent in the medical process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.").

The evidence of record in this case establishes for the claimant a long history of Type II Diabetes Mellitus. (*See, e.g.,* Tr. 151-153, 157-158, 161-162, 168, 170, 174, 177, 180, 184, 186, 199-202, 208-209, 212, 215, 220, 235, 242A, 254, 273, 278 & 306A) By 1998, plaintiff already had a long history of non-insulin dependent diabetes (Tr. 157; *see also* Tr. 339 (plaintiff's testimony that her diabetes began at age 18); *see* Tr. 151-153 & 168); her condition became insulin-dependent in 1999 (Tr. 184 & 188). Associated with her

---

1452 n.9, 1452-1453 (11th Cir. 1987).

diabetes, plaintiff has experienced cellulitis[4] and abscesses (Tr. 199 ("The patient was admitted to the hospital with a perineal abscess and associated diabetes."); *see also* Tr. 161)). In December of 2004, Dr. Lloyd May diagnosed diabetes mellitus with peripheral neuropathy.[5] (Tr. 220 ("Neurologic: She has decreased sensation distal upper extremities bilateral and lower extremities bilateral.")) During the administrative hearing, plaintiff testified that her diabetes is the worse single problem she experiences (Tr. 350); it makes her weak and lightheaded and that it causes numbness in her hands, legs and feet (Tr. 339-340). The numbness she experiences in her hands causes her difficulty with respect to lifting and grasping objects and the numbness in her lower extremities, particularly on the right, makes walking and standing more difficult. (*Id.* at 340; *see also* Tr. 344 (she has burned herself while cooking because she could not feel the pan and held it too long after taking it off the

---

[4] Cellulitis is "an acute, diffuse, spreading, edematous, suppurative inflammation of the deep subcutaneous tissues and sometimes muscle, which may be associated with abscess formation." *The Sloane-Dorland Annotated Medical-Legal Dictionary*, 112 (Supp. 1992).

[5] Neuropathy is a general medical term "denoting functional disturbances and/or pathological changes in the peripheral nervous system." *The Sloane-Dorland Annotated Medical-Legal Dictionary*, *supra,* at 375. "Peripheral neuropathy, or polyneuropathy, consists of 'neuropathy of several peripheral nerves simultaneously.'" *Mendoza v. Apfel*, 88 F.Supp.2d 1108, 1109 n.1 (C.D. Cal. 2000) (citation omitted). Diabetic neuropathy is "a chronic, symmetrical sensory polyneuropathy affecting first the nerves of the lower limbs and often affecting autonomic nerves; pathologically, there is segmental demyelination of the peripheral nerves." *The Sloane-Dorland Annotated Medical-Legal Dictionary*, *supra*, at 376.

stove); Tr. 346 (numbness presents a problem in terms of holding a pen to write and picking up small objects))

In light of the foregoing evidence, this Court finds that the ALJ committed reversible error in implicitly finding plaintiff's insulin-dependent diabetes mellitus with peripheral neuropathy to be a non-severe impairment. (*Compare* Tr. 23, Finding 3 ("The claimant possesses the impairments of status post fracture of the tibia/fibula with mild residual valgus to the ankle, lumbar strain, and mild lumbar degenerative disc disease, which are 'severe' impairments under the Act and Regulations.") *with* Tr. 21("She testified at the hearing that her main problem was with diabetes. However, she was not specific as to how her diabetes keeps her from working. Furthermore, the medical records from Franklin Primary Health Center in Exhibits 23F and 28F indicate that on several occasions her diabetes mellitus was not controlled because of medication non-compliance. At one time she even refused her prescription.")) Nowhere does the ALJ reject the December 2004 diagnosis of Dr. May that plaintiff experiences diabetes mellitus with peripheral neuropathy (*see* Tr. 22); therefore, the Court finds that the ALJ accepted that diagnosis, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992) (Johnson, J. concurring specially) ("Although the ALJ could have legitimately

discounted the diagnoses, he could have done so only if he had clearly articulated his reasons for such action. . . . Moreover, the ALJ's proffered reasons for discounting the diagnoses had to be supported by substantial evidence. . . . In this case, the ALJ has not articulated *any* valid reasons for calling into question the diagnoses–much less supported his medical conclusions with substantial or considerable evidence."). Moreover, contrary to the conclusory determination made by the ALJ, the plaintiff specifically identified how her diabetes affects her ability to perform basic work activities. (*Compare* Tr. 21 ("However, she was not specific as to how her diabetes keeps her from working.") *with* Tr. 340 & 346 (plaintiff's testimony that the numbness she experiences in her lower extremities causes her difficulty in standing and walking and that the numbness she experiences in her hands makes it more difficult for her to grasp and pick up objects, particularly small objects)) Because the ALJ failed to specifically reject the plaintiff's testimony regarding the impact of her diabetes on her ability to walk and stand and lift and grasp objects, he accepted that testimony as true. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) ("It is established in this circuit that if the [Commissioner] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [Commissioner], as a matter of law, has

accepted that testimony as true."). Accordingly, the evidence of record in this case emphatically establishes that Scott's diabetes mellitus with peripheral neuropathy is not just a trivial impairment; instead, it is an impairment which by her uncontradicted and uncontroverted testimony significantly limits her physical ability to perform basic work activities. *See, e.g., Oakes v. Barnhart*, 400 F.Supp.2d 766, 773 (E.D. Pa. 2005) ("As Judge Hart noted in his Report and Recommendation, the ALJ determined that Oakes suffered from a series of severe impairments: lumbar disorder, diabetes mellitus with peripheral neuropathy of the feet, and obesity[.]"); *Higgins v. Barnhart*, 294 F.Supp.2d 1206, 1209 (D. Kan. 2003) ("The ALJ in this case concluded that Plaintiff had the severe impairments of stenosis of the aortic valve with left ventricular hypertrophy, status post valve replacement in June 1998, insulin dependent diabetes mellitus with some retinopathy as well as probable peripheral neuropathy in the lower extremities."); *Ocasio v. Barnhart*, 2002 WL 485691, *2 (E.D. N.Y. 2002) ("The ALJ found that Plaintiff did have severe physical impairments consisting of insulin-dependent diabetes mellitus and related conditions and essential hypertension, and a severe mental impairment with anxiety, depression, and history of substance abuse, now in remission."). Scott's diabetes mellitus with peripheral neuropathy is a severe impairment

which, on remand, must be considered in conjunction with all of her other severe impairments in determining whether she retains the residual functional capacity to perform her past relevant work or any other work existing in significant numbers in the national economy.

## CONCLUSION

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g),  *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412,  *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 5th day of April, 2007.

                        s/WILLIAM E. CASSADY
                        **UNITED STATES MAGISTRATE JUDGE**